# Richmond

EDWARD V. CARTER v. S. V. BUTLER.

April 21, 1947.

.Record No. 3172.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley
and Buchanan, JJ.

The opinion states the case.

*John B. Browder, Leith S. Bremner* and *Robert Lewis Young*, for the plaintiff in error.

*C. O'Conor Goolrick* and *Jos. A. Billingsley*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

S. V. Butler instituted an action against Edward V. Carter, owner, and Murphy Tate, operator, of a truck, for injuries received by him, and obtained a verdict and judgment in the court below for $3,000. Tate has not applied for a writ of error.

Butler, who was at the time a State traffic officer, had stopped a Mr. Robert Inglis on State Highway No. 205 at around one p. m., for the purpose of summoning him to court for violating a traffic regulation. Inglis brought his car to a stop on the south side of the highway as near the right-hand side as possible. His left front and rear wheels

were about one foot on the hard surface, which was at that point 19 feet wide. Butler, accompanied by the sheriff of the county, proceeded to a point some 40 feet beyond the Inglis car and brought his car to a stop. It was raining at the time and Butler sat in his own car and made out the traffic ticket. After this he went back to the Inglis car for the purpose of delivering the ticket to him and was engaged in this duty when the truck belonging to Carter and driven by Tate approached from the rear of the Inglis car. It was driven so close to the Inglis car that the front fender brushed Butler's trousers. He then turned, grabbed hold of the overhang of the truck and was carried a short distance when the truck was brought to a stop and Butler was thrown violently to the highway, sustaining serious injuries.

The highway was comparatively straight for several hundred feet to the rear and several hundred feet to the front of the Inglis car. The evidence, including the physical facts, disclosed clearly that the proximate cause of Butler's injuries was the negligence of the driver of the truck in passing too close to the Inglis car when he had some 18 feet of hard surface to pass upon.

The defense to the case in the court below, and it is urged here, was that this was an unavoidable accident; that as Tate approached the Inglis car he attempted to slow his truck and put his foot on the brake, but there was no reason shown for the application of his brakes. It is contended that the brake grabbed and drew the truck so close to the right that it struck Butler. This contention was rejected by the jury upon abundant evidence,—in fact, the sheriff, after the accident, viewed the tire mark on the road and testified that it ran from a point where the truck was brought to a stop back 47 feet and that it was a straight mark, not bearing to the right as testified by Tate. Therefore, we need not (as we are invited by counsel for defendant) discuss the effect of contrary inferences that might be drawn from certain facts, where one inference might be consistent with the absence of negligence while the other consistent with its presence, for here we do not have to rely upon inferences. The direct

testimony and the compelling physical facts require an affirmance of the judgment.

Another point is made by the plaintiff in error which questions the validity of the verdict of the jury. The jury had retired and some time later returned into court, and upon being asked by the court if they had agreed upon a verdict one of them answered as follows: "The jury decided on the insurance company giving Mr. Butler $3,000."

It is contended that the statement of the juror in response to the inquiry shows that the jury knew the defendant carried liability insurance on the truck and that any judgment awarded against the defendant would have to be paid by the insurance company, and that for this reason the verdict was not valid. It is also contended that the statement of the juror amounted to a verdict, though invalid, and that it could not be amended.

Prior to sending the jury out to consider its verdict the court had told them that they need not write out their verdict but after having agreed upon one they could come into court and the court would write the verdict for them, and this is what occurred:

"The Clerk: Have you agreed upon a verdict? You haven't written anything.

"The Court: Tell us what your verdict is.

"A Juryman: The jury decided on the insurance company giving Mr. Butler $3,000."

Thereupon a formal verdict was written in these words:

"We, the jury, on the issue joined, find for the plaintiff and fix his damages at $3,000."

The court inquired if that was the verdict of the jury and the jurors answered in the affirmative. The foreman of the jury had previously signed the verdict. The court accepted it as the verdict of the jury.

It is perfectly obvious from reading the record in this case that the question of liability insurance on the truck was never brought out or mentioned by either counsel or the court. It appeared in the case for the first time in the

informal verbal statement of a juror, which was not the verdict. The court did not accept it as the verdict.

Many jurymen at this time, in the trial of cases of this kind, know that most of the owners of motor vehicles are insured against liability for injuries which may be inflicted by such owners or their agents through negligence. In fact many jurors carry this kind of insurance. This knowledge certainly cannot operate against a plaintiff. He should not be penalized because a juryman knew, or assumed, that there was insurance when the plaintiff and his counsel were at no fault in bringing this knowledge to the jury.

The formal verdict of the jury does not reflect that the jury was actuated by any prejudice for the verdict is modest in amount for the serious injuries Butler sustained. This is not a case in which counsel has deliberately and improperly injected into it the fact that a defendant's car or truck was covered by an insurance policy.

The judgment is affirmed.

*Affirmed.*